IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY | : : : | CIVIL ACTION |
| v. | : : | |
| ANGIE HARRIS, ADMINISTRATRIX FOR THE ESTATE OF AARON HARRIS | : : | NO. 20-741 |

| | | |
|---|---|---|
| ANGIE HARRIS, ADMINISTRATRIX FOR THE ESTATE OF AARON HARRIS | : : : | CIVIL ACTION |
| v. | : : | |
| ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY | : : | NO. 20-1285 |

**MEMORANDUM**

**Padova, J.**                                                                                          **September 28, 2022**

      Plaintiff Allstate Vehicle and Property Insurance Company ("Allstate") has moved for the entry of summary judgment in its favor in these consolidated actions. In its own action, Allstate seeks a declaration that it has no duty to indemnify Angie Harris, Administratrix for the Estate of Aaron Harris, for any claim regarding or arising from the February 20, 2018 fire at the property located at 2331 West York Street, Philadelphia, Pennsylvania (the "Property"). Allstate also asks us to dismiss the breach of contract claim filed by Angie Harris. For the reasons that follow, we deny the Motion in its entirety.

**I.      FACTUAL BACKGROUND**

      Aaron Harris purchased the Property in August 2017 for $4,000.00. (Concise Statement of Stipulated Material Facts ("Stip. Facts") ¶ 21.) On January 3, 2018, Aaron Harris applied for and purchased a homeowners insurance policy for the Property from Allstate. (Id. ¶ 2.) In his

application for insurance, Aaron Harris represented that he lived in the building as the owner, that the building was his primary residence, and that the residence would be occupied within the next 30 days. (Id. ¶ 4; Allstate Compl. Ex. A (the application for insurance) at 20 of 237.) On January 10, 2018, Allstate issued Aaron Harris "a Standard House & Home Policy for the Property, Policy #998829911 ('the Policy')." (Stip. Facts ¶ 5; Allstate Compl. Ex. B (the Policy).) The Policy had limits of $258,775.00 for the structure, $181,143 for the contents of the Property, and a deductible of $1,500.00. (Stip. Facts ¶¶ 7-8.)

On February 20, 2018, 41 days after the Policy became effective, the Property was damaged by fire. (Id. ¶ 11.) Both the City of Philadelphia Fire Department and a fire investigator hired by Allstate determined that the cause of fire was incendiary and that the fire started in a rear bedroom on the second floor of the Property. (Id. ¶¶ 12, 16; Allstate Compl. Ex. C at 69 of 237 (Philadelphia Fire Dept. Report of Fire Alarm); Allstate Compl. Ex. D at 73 of 237 (report prepared by fire investigator Gerard Piotrowicz).) A few hours after the fire, Aaron Harris contacted Allstate and opened a claim for the fire damage to the Property. (Stip. Facts ¶ 14.)

During its investigation of Aaron Harris's claim, Allstate learned that, at the time of the fire, Aaron Harris was on parole. (Id. ¶ 17.) Allstate also learned that, beginning sometime after August 30, 2017, Aaron Harris had been required, by his parole plan with the Pennsylvania Board of Probation and Parole, to reside with his girlfriend, Amanda Ramos, at her home located at 3118 Tyson Avenue, Philadelphia, Pennsylvania.[1] (Id.; Allstate Compl. Ex. E at 90, 110 of 237

---

[1] The record is not clear with respect to the date on which Mr. Harris was first required to reside with Amanda Ramos. The parties stipulated that he was required to reside with Ms. Ramos beginning on August 30, 2017, but the records of the Board of Probation and Parole simply state that Amanda Ramos agreed on August 30, 2017 that Mr. Harris could live with her and that the probation officer checked her home on that date to see if it would be suitable for Mr. Harris. (Compare Stip. Facts ¶ 17 with Allstate Compl. Ex. E at 90, 110.) In fact, the probation officer's August 30, 2017 notes record that the probation officer would reach out to Mr. Harris at a future

(Pennsylvania Board of Probation and Parole Home Provider Agreement and Case Notes 8/30/17).) Aaron Harris would have been in violation of his parole if he lived anywhere other than Amanda Ramos's home at 3118 Tyson Avenue. (Stip. Facts ¶ 19.) The Pennsylvania Board of Probation and Parole did not give Aaron Harris permission to live at the Property. (Id. ¶ 20.)

Allstate obtained a recorded statement from Aaron Harris as part of its investigation of his claim. (Id. ¶ 22; Allstate Compl. Ex. G.) In his recorded statement, Aaron Harris said that the Property had gas heat and electrical utility service, though not in his name, and that it also had a working stove and a refrigerator in the kitchen. (Allstate Compl. Ex. G at 8-9.) Aaron Harris also reported to Allstate that he had disconnected the utilities at the Property about two weeks before the fire. (Id. at 9.) Aaron Harris further told Allstate that the Property had a working bathroom until about two weeks before the fire, when he paid people to take out the bathroom so that he could remodel it. (Id. at 10-11.) Aaron Harris also told Allstate's investigator that he had been living at the Property until he took the bathroom out to remodel it, and that he had been staying with his girlfriend at 3118 Tyson Avenue since that time. (Id. at 3.) Aaron Harris was remodeling the bedroom as well as the bathroom on the second floor of the Property. (Id. at 7.) He kept furniture and clothes in the Property and Amanda Ramos also kept clothes there. (Id. at 12.) Aaron Harris also told the investigator that, during the two weeks before the fire, while he was living with his girlfriend, he used the Property as a place to take women for a few hours and "'do what I do.'" (Id. at 16.) Aaron Harris further told the investigator that there were roofers at the Property on the date of the fire replacing the roof because the roof had a leak. (Id. at 14-15.)

---

date, after she spoke with Ms. Ramos's landlord, to let him know if he would be able to stay with Ms. Ramos.

3

Allstate tried to schedule an Examination Under Oath of Aaron Harris as part of its investigation of his claim. (Stip. Facts ¶ 29.) However, Aaron Harris was killed before the Examination Under Oath could take place. (Id. ¶ 31.) Angie Harris, Aaron Harris's mother, subsequently pursued the insurance claim on behalf of Aaron Harris's estate. (Allstate Compl. Ex. L.)

On January 31, 2019, Angie Harris commenced a lawsuit against Allstate on behalf of the Estate of Aaron Harris by filing a Praecipe for a Writ of Summons in the Court of Common Pleas of Philadelphia County, January Term 2019, No. 03243. (Allstate Compl. Ex. M.) On February 10, 2020, Allstate filed Civil Action No. 20-741 in this Court against Angie Harris, Administratrix for the Estate of Aaron Harris, seeking a declaration that it owes no duty to indemnify the Estate of Aaron Harris for any damages caused by the fire at the Property. (See Allstate Compl. at 15 of 237.) Angie Harris moved to dismiss Allstate's Complaint for lack of subject matter jurisdiction and we denied that motion on July 22, 2020. (See Civ. A. No. 20-741, Docket Nos. 6, 10.) On March 3, 2020, Angie Harris filed a Complaint in the state court action against Allstate. (See Civ. A. No. 20-1285, Docket No. 1 at 257 of 271.) The Complaint asserted claims for breach of contract and bad faith in violation of 42 Pa. Cons. Stat. Ann. § 8371. Allstate removed the state court action to this Court on March 5, 2020. (See Civ. A. No. 20-1285, Docket No. 1.) Allstate filed a motion to dismiss the bad faith claim and we granted that motion on August 4, 2020. (See Civ. A. No. 20-1285, Docket Nos. 4, 9.) Allstate filed a motion to consolidate the two cases, we granted that motion on August 27, 2020. (See Civ. A. No. 20-741, Docket Nos. 4, 15; Civ. A. No. 20-1285, Docket No. 13.) On August 3, 2020, Allstate moved for entry of judgment on the pleadings with respect to its Complaint against Angie Harris and we denied that Motion on March 24, 2021. (See Civ. A. No. 20-741, Docket Nos. 12, 23.)

Allstate has moved for summary judgment as to its request for a declaration that it has no duty to indemnify Angie Harris, Administratrix of the Estate of Aaron Harris, for any damages caused by the fire at the Property and as to Angie Harris's claim of breach of contract arising from Allstate's refusal to pay for that loss pursuant to the Policy. Allstate contends that it is entitled to summary judgment because Aaron Harris made misrepresentations in connection with his application for insurance with Allstate and because Aaron Harris failed to satisfy the residency requirement of the Policy, both of which preclude coverage for the fire damage.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. (citation omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials [that the moving party has] cited do not establish the

absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).  Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  In ruling on a summary judgment motion, we "construe the evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion." Jacobs v. Cumberland Cnty., 8 F.4th 187, 192 (3d Cir. 2021) (citing Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)).

**III.   DISCUSSION**

    A.   Construction of Insurance Policies

Allstate contends that it is entitled to summary judgment because Aaron Harris made misrepresentations with respect to his residence at the Property and failed to reside at the Property as required for coverage under the Policy.  "Under Pennsylvania law, '[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement.'" Wilson v. Hartford Cas. Co., 492 F. Supp. 3d 417, 426 (E.D. Pa. 2020) (alteration in original) (footnote omitted) (quoting In re Old Summit Mfg., LLC, 523 F.3d 134, 137 (3d Cir. 2008)) (add'l citations omitted).  "Courts interpret coverage clauses broadly 'to afford the greatest possible protection to the insured,' and accordingly, they interpret exceptions to an insurer's general liability narrowly against the insurer." Verticalnet, Inc. v. U.S. Specialty Ins. Co., 492 F. Supp. 2d 452, 456 (E.D. Pa. 2007) (quoting Westport Ins. Corp. v. Bayer, 284 F.3d 489, 498 n.7 (3d Cir. 2002)).  "When the language of an insurance policy is clear and unambiguous, a court applying Pennsylvania law is required to give effect to that language." Wilson, 492 F. Supp. 3d at 426 (citing 401 Fourth St., Inc. v. Inv'rs Ins. Grp., 879 A.2d 166, 171 (Pa. 2005); Sentinel Ins. Co., Ltd. v. Monarch Med Spa, Inc., 105 F. Supp. 3d 464,

471 (E.D. Pa. 2015)).  See also 4431, Inc. v. Cincinnati Ins. Cos., 504 F. Supp. 3d 368, 382 (E.D. Pa. 2020) (stating that "[w]hen policy language is clear and unambiguous, a court applying Pennsylvania law must give effect to that language" (quoting Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am., 503 F.Supp.3d 251, 255 (E.D. Pa. 2020)).  However, if the terms used in an insurance policy "are open to more than one interpretation, they are regarded as ambiguous."  Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 677 (3d Cir. 2016) (citing Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999)).  Further, "it is well settled that insurance policies are in essence contracts of adhesion, and consequently, any ambiguities or uncertainties in language are construed strictly against the insurer and in favor of coverage."  Ranieli v. Mut. Life Ins. Co. of Am., 413 A.2d 396, 400 (Pa. Super. Ct. 1979) (citations omitted).  However, "[c]ourts may not 'distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.'"  Wilson, 492 F. Supp. 3d at 426 (quoting Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).

"Ordinarily in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage."  State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (citing Koppers Co. v. Aetna Cas. and Sur. Co., 98 F.3d 1440, 1446 (3d Cir. 1996)). However, "if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does."  Id. (citing Koppers, 98 F.3d at 1446). Under Pennsylvania law, "exclusions are strictly construed against the insurer." Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3 (3d Cir. 1998) (citations omitted).

B.      Material Misrepresentations

Allstate argues that Aaron Harris made misrepresentations on his application for insurance that operate as a complete bar to coverage because those misrepresentations allow it to rescind the Policy. In order to rescind an insurance policy based on misrepresentations, the insurance company must prove the following three factors by clear and convincing evidence: "(1) the insured made a false representation; (2) the insured knew the representation was false when it was made or the insured made the representation in bad faith; and (3) the representation was material to the risk being insured." Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 129 (3d Cir. 2005) (footnotes omitted) (citing Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521 (3d Cir.2004)). "Information is material 'if knowledge or ignorance of it would influence the decision of the issuing insurer to issue the policy, or the ability of the insurer to evaluate the degree and character of risk, or the determination of the appropriate premium rate.'" Sadel v. Berkshire Life Ins. Co. of Am., Civ. A. No. 09-612, 2011 WL 292239, at *9 (E.D. Pa. Jan. 31, 2011), aff'd, 473 F. App'x 152 (3d Cir. 2012) (quoting Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 357 (E.D. Pa. 1997)). "In order for the court to grant summary judgment for the insurer . . . [the insurer] must show that reasonable minds could not differ on the question of the reasonableness of [the insurer's] belief that rescission was appropriate." Jung, 949 F. Supp. at 356.

"Generally, fraud can be presumed where the insured knowingly provides an insurer with false information." Am. Builders Ins. Co. v. Custom Installations Contracting Servs., Inc., Civ. A. No. 15-0295, 2019 WL 3414451, at *6 (W.D. Pa. July 29, 2019) (citing Shafer v. John Hancock Mut. Life Ins. Co., 189 A.2d 234, 236 (Pa. 1963)). "'If representations were in fact false and the insured knew of their falsity when the statements were made, the statements are presumptively fraudulent.'" Id. (quoting Payne v. Allstate Ins. Co., Civ. A. No. 11-2546, 2016 WL 6892727, at

\*4 (E.D. Pa. Nov. 22, 2016)); see also Payne, 2016 WL 6892727, at \*4 (noting that, if the falsity of the statements "and the requisite bad faith affirmatively appear from . . . the uncontradicted testimony of plaintiff's own witnesses, a verdict may be directed for the insurer.'" (alteration in original) (citing and quoting Shafer, 189 A.2d at 236)). Allstate maintains that Aaron Harris made the following misrepresentations in his application for insurance, which he signed on January 3, 2018, that justify the rescission of the Policy: (1) that he was living in the Property as its owner; (2) that the Property was his primary residence; and (3) that the Property would be occupied within the next 30 days. (Stip. Facts ¶¶ 2, 4; Allstate Compl. Ex. A at 4.) Allstate maintains that those representations were untrue.

Allstate contends that the residency requirements of Aaron Harris's parole prevented him from residing at the Property. Indeed, at the time of the fire, Aaron Harris's parole plan with the Pennsylvania Board of Probation and Parole required him "to live with his girlfriend, Amanda Ramos, at a property located at 3118 Tyson Avenue, Philadelphia, PA 19149 as of August 30, 2017." (Stip. Facts ¶ 17.) Moreover, pursuant to this parole plan, "Aaron Harris was not legally permitted to live anywhere other than 3118 Tyson Avenue, Philadelphia, PA 19149 . . . without written permission from the parole supervision staff." (Id. ¶ 18.) If Aaron Harris lived anywhere else, "he would have been in violation of his parole." (Id. ¶ 19.)

Angie Harris maintains there is a genuine issue of material fact regarding whether Aaron Harris made intentional misrepresentations regarding his residence when he applied for insurance from Allstate. She asserts that Aaron Harris could have had more than one residence and that he could have been, and in fact was, in violation of the residency provisions of his parole. There is record evidence that Aaron Harris resided at four different places in Philadelphia while he was on parole. Aaron Harris told Allstate in his recorded statement that he lived at the Property, that he

lived with his girlfriend, Amanda Ramos, in her home at 3118 Tyson Avenue, Philadelphia, PA 19149, and that he lived with his godparents at 425 E. Thompson Street, Philadelphia, PA. (Allstate Compl. Ex. G (Aaron Harris's recorded statement) at 2-3.) The Pennsylvania Board of Probation and Parole case notes for Aaron Harris show that he resided with his godparents after he commenced probation. (Mot. For Sum. Judg. Ex. E at 32-33.) The case notes also show that he subsequently lived with his sister at 4925 Saul Street, Philadelphia, PA from April 13, 2017 until sometime after August 30, 2017. (Id. at 24-30 of 33.) He moved to Amada Ramos's residence at 3118 Tyson Avenue sometime after August 30, 2017. (Id. at 15-24 of 33.) In addition, Ashlee Harris, Aaron Harris's sister, testified at her deposition that she believed that her brother lived at the Property because he told her that he lived there. (Harris Ex. 3 at 16.)

The record thus shows that Aaron Harris told Allstate during his recorded statement that he was living at the Property until two weeks prior to the fire and that his probation officer believed that he was living with Amanda Ramos beginning after August 30, 2017. Thus, there is evidence that, at the time Aaron Harris applied for insurance with Allstate, he was residing at the Property in violation of his parole and there is also evidence that he was residing with Amanda Ramos. Accordingly, based on the record before us, we have no way of ascertaining whether Aaron Harris was living with Amanda Ramos when he applied for insurance with Allstate, and, if so, whether he also resided at the Property, or intended to reside at the Property within 30 days, as he represented in his application for insurance. We conclude, accordingly, that Allstate has failed to show that there are no genuine issues of material fact regarding whether Aaron Harris misrepresented his residence when he applied for insurance with Allstate and, if he did make such a misrepresentation, that he knew that his representation was false at the time that he made it. See Northwestern Mut. Life, 430 F.3d at 129. Accordingly, we deny the Motion for Summary

Judgment with respect to Allstate's argument that it can rescind the Policy because Aaron Harris knowingly misrepresented in his application for insurance that he lived at the Property or would live at the Property within 30 days after he completed his application for insurance.

      C.      Residency at the Time of the Loss

Allstate also argues that it is entitled to summary judgment as to all claims in this case based on the Policy's residence requirement. Allstate maintains that the Policy precludes coverage for the fire loss because Aaron Harris did not reside at the Property on the date of the loss as required by the Policy. "Construction of the term 'resident' in the policy is a matter of law." Nationwide Mut. Ins. Co. v. Budd-Baldwin, 947 F.2d 1098, 1100 (3d Cir. 1991) (citing Myers v. State Farm Ins. Co., 842 F.2d 705, 708 (3d Cir. 1988); Ram Constr. Co. v. Am. States Ins. Co., 749 F.2d 1049, 1053 (3d Cir. 1984)); see also Mu'Min v. Allstate Prop. & Cas. Ins. Co., Civ. A. No. 10-7006, 2011 WL 3664301, at *9 (E.D. Pa. Aug. 17, 2011) ("Pursuant to Pennsylvania law, construction of the term 'resident' in an insurance policy is a matter of law." (citing Nationwide, 947 F.2d at 1100; Schultz v. Encompass Ins., Civ. A. No. 03-3936, 2004 WL 2075114 at *3 (E.D. Pa. Sept.16, 2004), aff'd, 145 F. App'x 397 (3d Cir. 2005))). "Although Pennsylvania law allows a person to have more than one residence, Pennsylvania courts generally concur that the 'classical' definition of residence requires '[l]iving in a particular place, requiring only physical presence.'" Mu'Min, 2011 WL 3664301, at * 9 (citing St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1439 (3d Cir. 1991)) (quoting Krager v. Foremost Ins. Co., 450 A.2d 736, 738 (Pa. Super. Ct. 1982)). "'A persons' intentions, whether intent to remain in a location or intent to move on elsewhere, are irrelevant in the residency analysis.'" Id. (quoting Allstate Ins. Co. v. Naskidashvili, Civ. A. No. 07-4284, 2009 WL 399793, at *3 (E.D. Pa. Feb. 16, 2009)). "Further, a person's own identification of the place he or she resides or calls home is not determinative." Id. (citing

11

Naskidashvili, 2009 WL 399793, at *3). "Rather, the term 'resident' or 'residency' requires, 'at the minimum, some measure of permanency or habitual repetition.'" Id. (quoting Naskidashvili, 2009 WL 399793, at *3). "As such, courts look at factors such as where a person sleeps, takes meals, receives mail, and stores personal possessions." Id. (citing Naskidashvili, 2009 WL 399793, at *3). "In turn, 'when a person actually lives in one location, and sporadically visits, or keeps certain personal items at, another location, it is the location where he lives that is his residence.'" Id. (quoting Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 560 (3d Cir. 2008)) (citing Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co., 545 A.2d 343, 347-48 (Pa. Super. Ct. 1988)). Thus, "[t]emporary visits, however frequent or regular, are simply insufficient to establish residency." Budd-Baldwin, 947 F.2d at 1102 (citation omitted).

Allstate contends that the following provisions of the Policy required Aaron Harris to reside at the Property as a condition precedent to insurance coverage:

> **Property We Cover Under Coverage A**:
>
> 1. **Your dwelling**, including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.
>
> **Dwelling**—means a one-, two-, three- or four- family **building structure**, identified as the insured property on the Policy Declarations, where **you** [Aaron Harris] reside and which is principally used as a private residence.

(Stip. Facts at ¶¶ 61-62; Policy at 5 and Extended Amendatory Endorsement AVP380 at 1.)

Allstate relies on Chong Chen v. Allstate Ins. Co., Civ. A. No. 11-2356, 2012 WL 460416, (E.D. Pa. Feb. 14, 2012), which considered the same insurance policy language defining the term "dwelling" and determined that "[a]ccording to the Policy, [plaintiff] is entitled to coverage if the [insured] property is a dwelling where [plaintiff] resides and that is principally used as a private residence." Id. at *6. Thus, it was clear to the Chong Chen court that "Plaintiff's residency [was]

a condition precedent to insurance coverage." Id. (citations omitted). Allstate argues, based on this authority, that it has no obligation to provide coverage for losses sustained in the February 20, 2018 fire because Aaron Harris did not reside at the Property at that time.

Allstate relies on the following evidence to show that there is no genuine issue of material fact regarding whether Aaron Harris resided at the Property at the time of the fire. In his recorded statement, Aaron Harris informed Allstate that he disconnected the gas and electric utilities at the Property and removed the bathroom fixtures so that he could renovate about two weeks before the fire. (Allstate Compl. Ex. G at 9-11.) At this point, beginning two weeks before the fire, Aaron Harris was just using the Property "as somewhere to take girls" for a few hours. (Id. at 16.) Allstate also relies on evidence that Aaron Harris did not have any electric, gas, cable, or phone utilities in his name at the Property, and that his water bill shows no estimated water usage for the period from August 2017 through March 2018.[2] (See Mot. Sum. Judg. Exs. T-X.) In addition, PECO maintains that there was no usage of electricity at the Property between June 2012 and March 2018. (Id. Ex. V.) There is also evidence that Aaron Harris did not use the address of the Property on his driver's license or in connection with his accounts at the Police and Fire Federal Credit Union and the American Heritage Federal Credit Union. (Stip. Facts ¶¶ 24, 43-46; Allstate Compl. Ex. G at 17.)

Angie Harris argues that we should deny the Motion for Summary Judgment as to this argument because the Policy is ambiguous with respect to whether a loss would be covered if the owner does not reside only at the Property at the time of the loss. "It is well settled that . . . any ambiguities or uncertainties in language are construed strictly against the insurer and in favor of

---

[2] All of the water bills supplied by Allstate show that the meter readings are estimated. (See Sum. Judg. Mot. Ex. X.) It appears, therefore, that no actual readings of the water meter were taken.

coverage." Ranieli, 413 A.2d at 400. The Policy does not define the terms "residence" and "reside." (Stip. Facts ¶ 9.)

Angie Harris relies on Ionata v. Allstate Ins. Co., Civ. A. No. 15-6561, 2016 WL 4538756 (E.D. Pa. Aug. 30, 2016), in which Allstate argued that, because its insured "was not living at the Property at the time of the fire, the Property cannot qualify as a 'Dwelling' under the terms of the Policy, and the loss is therefore outside the scope of coverage." Id. at *2. The insured in that case had moved out of the Property, but "continued to use the Property as her permanent mailing address and spent time at the Property two to three times per week. She also continued to have numerous personal items including clothing, children's clothes, furniture and home furnishings at the Property." Id. at *1 (citation and quotation omitted). The Allstate insurance policy in Ionata defined "Dwelling" using the same definition as the Policy in this case. See id. at *2. The insurance policy in Ionata also provided that "[t]he residence premises may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils." Id. at *3. The Policy in this case contains a nearly identical provision.[3] (See Policy at 13 of 19.) The Ionata court noted that "[l]ogically, it is difficult to reconcile Allstate's position that the policyholder must be living on the premises with a clause that provides the Property may be vacant or unoccupied for any length of time." Ionata, 2016 WL 4538756, at *3. The Ionata court concluded that the Policy was thus ambiguous with respect to its residence requirement because:

> [t]he sine qua non of Allstate's position is that the policyholder personally must be on the premises for coverage to apply, and yet the Policy specifically provides coverage even if it is vacant. Necessarily, if the Property were vacant, the insured would not be 'residing' there in the sense advanced by Allstate as the foundation for its argument.

---

[3] The Policy in this case provides that "[t]he **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy." (Policy at 13 of 19.)

14

Id.

Angie Harris maintains that the Policy in this case is similarly ambiguous with respect to whether the policyholder is required to reside at the Property as a condition of coverage and, accordingly, that the residency requirement should be construed against Allstate and in favor of the Estate of Aaron Harris.  She also argues that, because the evidence shows that Aaron Harris purchased the Property, spent time there, invited and brought guests to the Property, kept personal belongings and furniture at the Property, and went to the Property every day to perform construction there, a reasonable factfinder could conclude that he resided at the Property for purposes of coverage, even if he also resided at his girlfriend's home.  (See Stip. Facts ¶ 21, Allstate Compl. Ex. G at 11-12.)

We agree with Angie Harris.  The Policy in this case, like the policy in Ionata, provides that "[t]he **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy."  (See Policy at 13 of 19.)  We cannot reconcile Allstate's position that Aaron Harris was required to reside solely at the Property as a condition of coverage "with [this] clause that provides the Property may be vacant or unoccupied for any length of time." Ionata, 2016 WL 4538756, at *3.  We therefore conclude, as did the Ionata court, that the residence requirement of the Policy is ambiguous.  Id.  As we must construe this aspect of the Policy against Allstate and in favor of coverage, and as there is record evidence that could support a finding that Aaron Harris sometimes resided at the Property, we conclude that Allstate has not shown that there is no genuine issue of material fact as to whether Aaron Harris was a resident of the Property entitled to coverage for the fire loss.  Accordingly, we deny the Motion for Summary Judgment as to this argument.

## IV.    CONCLUSION

For the reasons stated above, we deny the Motion for Summary Judgment in its entirety. An appropriate order follows.

                                                                        BY THE COURT:

                                                                        /s/ John R. Padova
                                                                        _____
                                                                        John R. Padova, J.